2019-09973

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS, ROCK ISLAND DIVISION

| | | |
|---|---|---|
| THEODORE BILLINGSLEY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. |
| IOWA INTERSTATE RAILROAD LTD., | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

## COMPLAINT

NOW COMES the Plaintiff, THEODORE BILLINGSLEY, by and through his attorneys, Marc J. Bern & Partners LLP, and complains and alleges against Defendant IOWA INTERSTATE RAILROAD LTD. as follows:

## INTRODUCTION

1. This suit arises out of the negligence of Defendant IOWA INTERSTATE RAILROAD LTD. (hereinafter "Defendant") that directly caused and resulted in Plaintiff developing throat cancer (hereinafter referred to as "cancer").

2. Plaintiff was diagnosed with throat cancer on approximately April 16, 2017.

3. The Federal Employers' Liability Act, 45 U.S.C. Sec. 51 et seq., (hereinafter "FELA") provides for this cause of action and grants this Court concurrent jurisdiction over it.

4. Defendant filed a Motion to Transfer or, in the Alternative, Dismiss on Grounds of *forum non conveniens* on May 27, 2020.

5. On April 26, 2021, the Circuit Court of Cook County granted Defendant's motion to dismiss Plaintiff's lawsuit with leave to refile in the Central District of Illinois under the doctrine of *forum non conveniens*. See Exhibit A, a copy of that order.

6. Plaintiff is an adult individual residing in East Moline, Illinois.

7. Defendant, at all times relevant to this complaint, engaged in interstate commerce in and throughout several states of the United States as a common carrier by rail; and for the purposes hereof did operate locomotives, railroad cars and repair facilities and transacted substantial business throughout the various states of the United States including the State of Illinois.

## GENERAL ALLEGATIONS

8. Plaintiff worked for Defendant, and its predecessor Chicago, Rock Island & Pacific Railroad, as a carman and a foreman from approximately 1969 to 2011.

9. As part of his employment with Defendant, Plaintiff worked at the Silvis, IL hump yard, the Rock Island rip track, and on the tracks between Council Bluff, Iowa to the Blue Island facility in Chicago, Illinois.

10. During the course and in the scope of his employment with Defendant, Plaintiff was engaged in the furtherance of interstate commerce within the meaning of FELA.

11. During the course and scope of Plaintiff's employment with Defendant and while working in its yards, buildings, and along its right-of-ways, Plaintiff was, on a daily basis, regularly and routinely exposed to various toxic substances known to be cancer causing agents including but not limited to the following: diesel exhaust/fumes/smoke/soot; polycyclic aromatic hydrocarbons (PAHs); paint and paint thinner; asbestos; welding fumes; heavy metals, including manganese and lead; arsenic; benzene; and creosote (hereinafter, collectively, "the toxic substances") and potentially others that may be discovered during litigation.

12. Specifically, while working as a carman, Plaintiff was exposed to welding fumes, heavy metals, including manganese and lead, by inhalation and/or skin absorption because he

regularly used a cutting torch to cut through metal, during which time he would be exposed to the welding fumes and heavy metals. Plaintiff would also be exposed to the particulates disbursed into the air from the process of cutting through that metal and would inhale those particulates as he worked.

13. Specifically, while working as a carman, Plaintiff was exposed to asbestos by inhalation and/or skin absorption because Plaintiff had to touch and work with brake shoes, pipes and boilers that contained asbestos, and was required to use insulation containing asbestos to wrap the pipes.

14. Specifically, while working as a carman and foreman, Plaintiff was exposed to diesel exhaust/fumes/smoke/soot, benzene, and polycyclic aromatic hydrocarbons (PAHs) by inhalation and/or skin absorption because Plaintiff worked around both running and idling locomotives, during which time he would be inhale the fumes, exhaust, and smoke from those locomotives.

15. Specifically, while working as a carman Plaintiff was exposed to paint and paint thinner by inhalation and/or skin absorption because Plaintiff would be required to paint, and to do so he would have to use paint thinner to thin the paint, and would inhale the fumes from the paint and paint thinner. Plaintiff also had to use paint thinner to clean the various painting tools, during which time he would inhale the fumes and it would often times come into contact with his skin.

16. Specifically, while working as a carman Plaintiff was exposed to creosote, benzene and arsenic by inhalation and/or skin contact because when he would perform maintenance on train cars, Plaintiff would have to work in close proximity to railroad ties. Plaintiff would have to crawl under train cars, during which time Plaintiff would kneel, sit, and/or lay directly on those

ties, and the creosote, which contains benzene and arsenic, would come into contact with Plaintiff's skin and clothing. Plaintiff would also inhale the fumes of those creosote-soaked ties.

17. Plaintiff's exposure to the above referenced toxic substances occurred regularly and routinely, on a daily basis, by touch, inhalation and/or consumption as a natural course of his regular, routine job duties for Defendant.

18. Plaintiff's exposure to the above referenced toxic substances was cumulative and occurred at different and variable exposure levels over the course of his career for Defendant, depending on the variable workload of a given day on the job.

19. Plaintiff's exposure to the above referenced toxic substances, which are known cancer causing agents, steadily over a course of many years caused, in whole or in part, his development of cancer.

20. Before and during Decedent's employment with Defendant, Defendant knew that Decedent's exposure to the toxic substances could foreseeably lead to cancer.

21. Before and during Decedent's employment with Defendant, Defendant should have known that Decedent's exposure to the toxic substances could foreseeably lead to cancer because studies, proceedings and literature took place and/or existed regarding the same during and/or before Decedent's employment, such as, for instance, and without limitation, proceedings of the Association of American Railways in the 1950s and 1960s; and studies done by epidemiologists in North America and Europe focusing on workers in occupational environments similar to Decedent's, including as long as ago as 1895 and up through Decedent's employment.

## COUNT I:
## NEGLIGENCE AGAINST DEFENDANT IOWA INTERSTATE RAILROAD

22. Plaintiff incorporates paragraphs 1–21 as if fully set forth herein.

23. It was the duty of Defendant, as Plaintiff's employer, at all times relevant to this

complaint, to use ordinary care to provide Plaintiff with a reasonably safe place in which to do his work.

24. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to measure the concentrations of the toxic substances released into Plaintiff's work area.

25. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to provide adequate warnings of the dangers of the toxic substances.

26. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to keep abreast of scientific and medical research evidence concerning the hazards of the toxic substances.

27. As part of that duty to provide a reasonably safe place in which to do work, Defendant, as Plaintiff's employer, at all times relevant to this Complaint, was required to provide hazard control.

28. "Hazard control" as used in paragraph 27 includes the use of engineering controls.

29. "Hazard control" as used in paragraph 27 includes the use of administrative controls.

30. "Hazard control" as used in paragraph 27 includes the use of personal protective equipment, including requiring the use of respirators.

31. During Plaintiff's employment, Defendant breach said duty in at least one or more of the following ways:

    a. Failure to use ordinary care and caution to provide the Plaintiff with a reasonably safe place in which to work as

       required by the FELA;

b.    Failure to take reasonably effective action to reduce, modify or eliminate certain job duties, equipment or practices so as to minimize or eliminate the Plaintiff's exposure to the toxic substances;

c.    Failure to reasonably test railroad facilities, equipment, yards, buildings, and right of ways for the presence of the toxic substances;

d.    Failure to reasonably engage in follow-up monitoring of its facilities, equipment, yards, building, and right of ways for the presence of the toxic substances;

e.    Failure to properly reduce to safe levels or remove known toxic materials and carcinogens from its facilities, equipment, yards, building, and right of ways;

f.    Failure to periodically reasonably test employees such as the Plaintiff for physical effects of exposure to the toxic substances and failing to take appropriate action, including advising the Plaintiff as to the test results;

g.    Failure to warn Plaintiff of the risk of contracting cancer or other diseases as a result of exposure to the toxic substances;

h.    Failure to make reasonable efforts to inspect or monitor the levels/amounts of exposure, of Plaintiff, to the toxic substances;

      i.      Failed to keep abreast of scientific and medical research evidence concerning the hazards of the toxic substances; and

      j.      Failed to consult scientific and medical research evidence concerning the hazards of the toxic substances.

32. The aforesaid occurrences were caused in whole or in part by the negligence of Defendant and/or the negligence of Defendant's agents, servants and/or employees.

33. It was the duty of Defendant, as Plaintiff's employer, at all times relative to this complaint, to use ordinary care to provide Plaintiff with reasonably safe and suitable tools, machinery, and appliances with which to do his work.

34. Using ordinary or reasonable care to furnish those tools which are reasonably safe and suitable, as described in paragraph 33, included at least requiring Plaintiff to wear a respirator mask.

35. Using ordinary or reasonable care to furnish those tools which are reasonably safe and suitable, as described in paragraph 33 included at least the monitoring of equipment emissions of any of the toxic substances, which includes reasonably upgrading equipment, either in whole or in part, so as to implement technology that reduced equipment emissions of any of the toxic substances.

36. During Plaintiff's employment, Defendant breached said duty in at least one or more of the following ways:

      a.      Failure to provide adequate ventilation systems for diesel exhaust where Plaintiff regularly worked;

      b.      Failure to provide Plaintiff with knowledge as to what would be reasonably safe and sufficient apparel and proper

        protective equipment to protect him from being poisoned and injured by exposure to the toxic substances; and,

    c.    Failure to provide Plaintiff with protective equipment designed to protect him from exposure to the toxic substances.

37. The aforesaid occurrences were caused in whole or in part by the negligence of Defendant and/or the negligence of Defendant's agents, servants, and/or employees.

38. As a direct result of one or more of the foregoing negligent acts of Defendant, in addition to others not specifically mentioned but that may be discovered during litigation, Plaintiff developed cancer.

39. Plaintiff experienced and endured and in the future will experience and endure: pain and suffering, inconvenience, irritation, annoyance; emotional distress; medical expenses associated with diagnosis and treatment; lost wages, disability, loss of normal life, increased susceptibility to injury, shortened life expectancy, and caretaking expenses, in addition to other injuries and expenses that would otherwise not have been necessary absent Defendant's negligence.

40. Plaintiff suffers from a constant fear of death because of his cancer.

41. Within three years of the filing of this Complaint, Plaintiff learned that his cancer was caused, at least in part, by the negligence of the Defendant.

42. Plaintiff requests trial by jury.

**WHEREFORE**, the Plaintiff demands judgment in his favor against the Defendant in a sum in excess of $150,000.000 plus the costs of this suit and any other relief the Court may grant.

Respectfully Submitted,

Stephen F. Monroe, IL #6305823
Marc J. Bern & Partners, LLP
22 W. Washington St., Ste. 1500
Chicago, IL 60602
Phone: (312) 894-7941
Fax:    (312) 873-4537
Email: smonroe@bernllp.com
*Attorneys for Plaintiff*

2019-09973

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, ROCK ISLAND DIVISION

| | | |
|---|---|---|
| THEODORE BILLINGSLEY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. |
| IOWA INTERSTATE RAILROAD LTD., | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all issues triable by jury.

          Respectfully Submitted,

          */s/ Stephen F. Monroe*

          Stephen F. Monroe, IL #6305823
          Marc J. Bern & Partners, LLP
          Cook Co. Firm No. 61789
          22 West Washington Street, Suite 1500
          Chicago, IL 60602
          Phone: (312) 894-7941
          Fax:   (312) 873-4537
          Email: smonroe@bernllp.com
          *Attorneys for Plaintiff*